IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

DAVID A. WARREN AND PATRICIA
A. WARREN, on behalf of themselves
and all others similarly situated,

      Plaintiffs,

v.

LOANDEPOT.COM.LLC,                         Civil Action No. 2:23-cv-00702

      Defendant.

**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF SETTLEMENT, CONDITIONAL
CERTIFICATION OF SETTLEMENT CLASS
<u>AND ENTRY OF SCHEDULING ORDER</u>**

**I.      INTRODUCTION**

Plaintiffs David A. Warren and Patricia A. Warren ("Plaintiffs"), by counsel and on behalf of the proposed settlement class, hereby respectfully submit this Memorandum in Support of their Motion for Preliminary Approval of Settlement and Entry of Scheduling Order. Plaintiffs and Defendant loanDepot.com, LLC, ("loanDepot" or "Defendant", and together, the "Parties") reached this settlement after exchange of class data and arms' length negotiations among counsel. The terms of the proposed settlement ("Settlement") are fair and will create a common fund of $285,000.00 and pay class members approximately $382.55 per fee assessed before deduction of attorney's fees and expenses, costs, and any service award. The relief compares favorably to the potential damages award (including statutory damages) available to the class and is, in class

1

counsel's view and in light of all the risks, an excellent outcome for class members. The proposed settlement agreement is subject to this Court's approval and is attached as **Exhibit A**.

Plaintiffs respectfully request that the Court enter an Order (1) preliminarily approving the Parties' proposed Settlement, embodied in the Settlement Agreement (the "Settlement Agreement") attached as Exhibit A; (2) provisionally certifying the proposed Settlement Class for settlement purposes only; (3) appointing Plaintiffs as class representatives and Plaintiffs' counsel as class counsel; (4) approving the form, manner, and content of class notice and the procedures for settlement class members to opt out or object; (5) approving Epperly Re:Solutions as the settlement administrator, (6) establishing a schedule to complete the tasks necessary to effectuate the proposed Settlement, and (7) staying the action pending Final Approval of the Settlement (except the stay of proceedings shall not prevent the filing of any motions, declarations, and other filings necessary to obtain and preserve final judicial approval of this Agreement). For the reasons set forth more particularly below, Plaintiffs respectfully request that the Court grant this Motion. loanDepot has agreed to the proposed order of preliminary approval attached to this motion, for settlement purposes only.

## II.      PROCEDURAL BACKGROUND

On October 30, 2023, Plaintiffs filed their Complaint (the "Complaint") against Defendant, case number 2:23-cv-00702, in the United States District Court for the Southern District of West Virginia, entitled *David A. Warren and Patricia A. Warren, on behalf of themselves and all others similarly situated, v. LoanDepot.com, LLC* (the "Action"). The Complaint alleged violations of the West Virginia Consumer Credit Protection Act ("WVCCPA") for Defendant's assessment of convenience fees when consumers made mortgage loan payments by phone or online. (ECF No. 1).

On January 4, 2024, the Court entered an Order and Notice ("Scheduling Order") pursuant

to Local Rule 16.1 of the Federal Rules of Civil Procedure. (ECF No. 8). The Court, upon the Parties' joint motions, extended the Scheduling Order on two separate occasions – once on January 31, 2024 (ECF No. 12), and once more on March 5, 2024 (ECF No. 15). During this time, the Parties informally exchanged class discovery and engaged in settlement negotiations.

On March 19, 2024, the Parties notified the Court of the substantial progress made toward resolution such that a settlement in principle had been reached between the Parties. (ECF No. 18). Shortly thereafter, the Parties resolved Plaintiffs' individual and class claims through arms' length settlement discussions among counsel and jointly moved to stay all proceedings and suspend all deadlines set forth in the March 5, 2024 Scheduling Order (ECF No. 15). (ECF No. 20).

The Settlement Agreement contemplates loanDepot's establishing a settlement fund totaling $285,000.00. This fund will be used to pay settlement payments to settlement class members, which payments will be allocated on a per-fee basis. Before payment of Plaintiffs' attorney's fees and expenses, costs, administrative costs, and any incentive awards to Plaintiffs, this settlement fund represents approximately $382.55 per fee paid to loanDepot by the putative class members. This is a significant recovery relative to the maximum potential statutory recovery per class member, which is $1000 per WVCCPA violation adjusted for inflation from September 2015. The settlement fund will also be used to pay attorneys' fees and expenses, costs, any administrative costs, and service awards, subject to Court approval.

Defendant has denied and continues to deny any and all allegations and claims asserted against it in the Complaint and denies any and all wrongdoing.

### III.   PROPOSED SETTLEMENT

**A.   Terms of the Settlement Agreement**

The proposed Settlement requires loanDepot to pay a Settlement Fund of $285,000.00. This amount is a lump sum payment inclusive of: (1) all Settlement Payments; (2) Class Counsel's

Fees and Expenses and court costs; (3) costs of Class Notice and Administrative Costs; and (4) any Class Representative Incentive Awards.

Plaintiffs' counsel will apply to the Court for a distribution of no more than one-third of the Settlement Fund, plus expenses, which sum (one-third of the Settlement Fund plus expenses) shall include all Attorney's Fees and Expenses incurred by Plaintiffs. Plaintiffs will also request incentive awards of $5,000 each for Plaintiffs' service to the class, subject to the Court's approval.

Settlement payments will be distributed on a one check per loan basis such that Settlement Class Members will receive a single check with a per-fee settlement payment amount as consideration for fully resolving the settled claims. One check shall be issued to co-borrowers on a single loan. For example, John and Jane Smith would be issued a check to "John Smith or Jane Smith". The Settlement Agreement fully protects the rights of class members to make objections to the settlement or to opt-out of the settlement.

The Parties have selected Epperly Re:Solutions as the Settlement Administrator, who will process claims, field calls and correspondence from Settlement Class Members, and disburse amounts from the Settlement Fund. David Epperly and his firm, Epperly Re:Solutions has extensive experience in administering class action settlements including direct mail services, database management, and settlement fund distributions services. The Settlement Administrator's fees and costs will be paid from the Settlement Fund.

B.  **Notice and Administration Provisions**

"In the context of a class action, the due process requirements of the Fifth Amendment require '[r]easonable notice combined with an opportunity to be heard and withdraw from the class.'" *Groves v. Roy G. Hildreth & Son, Inc.*, No. 2:08-cv-820, 2011 WL 4382708 *3 (S.D.W. Va. Sept. 20, 2011) (quoting *In re Serzone Prods. Liability Litig.*, 231 F.R.D. 221, 231 (S.D.W.

Va. 2005)); *see also Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 472 (W.D. Va. 2011). Rule 23(c)(2) requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2); *see also Robinson v. 3rd Group Properties, LLC*, No. 1:18-cv-00646, 2020 WL 4558978, at *3 (M.D. N.C. Jan. 29, 2020); *Helmick v. Columbia Gas Transmission*, No. 2:07-cv-743, 2010 U.S. WL 2671506, at *8 (S.D.W. Va. July 1, 2010); *Muhammad v. Nat'l City Mortgage, Inc.*, No. 2:07-cv-423, 2008 WL 5377783, at *3 (S.D.W. Va. Dec. 19, 2008). The notice must "inform potential class members of the nature of the action, that class members may make an appearance through counsel, that class members may exclude themselves from the settlement, and that the class judgment will have a binding effect on class members who are not excluded." *Groves*, 2011 WL 4382708, at *3; *Helmick*, 2010 WL 2671506, at *8. Silence on the part of potential class members receiving the notice equates to "tacit consent to the court's jurisdiction." *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 231; *see also Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283, 306 (3d Cir. 1998).

The type of notice to which a member of a class is entitled depends upon the information available to the parties about that person, and the possible methods of identification. *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1098 (5th Cir. 1977) (*citing Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)). In determining the reasonableness of the effort required, the court must look to the "anticipated results, costs, and amount involved." *In re Nissan*, 552 F.2d at 1099. "[D]ue process is satisfied 'where a fully descriptive notice is sent first-class mail to each class member, with an explanation of the right to opt out.'" *Domonoske*, 790 F. Supp. 2d at 472 (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)).

5

Defendant has queried its records to determine the name, last-known address, and pertinent account information for settlement class members. After the Settlement Administrator agrees to be bound by the protective order (ECF 21), loanDepot will provide the Settlement Administrator with the last known address and social security number of each Settlement Class Member and will provide Class Counsel with the last known address of each Settlement Class Member. With such detailed information, the first-class mailed notice proposed in the Settlement Agreement will provide the best notice to class members. Notices returned with forwarding addresses shall be promptly re-mailed. Any notices returned without a forwarding address shall be re-mailed after the Settlement Administrator searches the National Change of Address database maintained by the United States Postal Service and performs a standard skip trace. These procedures are designed to reach the maximum number of Settlement Class Members at a reasonable expense.

The Parties' proposed Notice of Class Settlement, attached as Exhibit A to the Settlement Agreement, provides a full description of the nature of the action, proposed settlement, and requested attorneys' fees. *See Domonoske*, 790 F. Supp. 2d at 472. The Notice describes in plain English the terms and operation of the settlement, the considerations that caused Class Counsel to conclude that the Settlement is fair and adequate, the procedure for objecting to and opting out of the settlement, and the date of the fairness hearing.

### IV.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL

Settlement of class actions must be approved by the Court. Fed. R. Civ. P. 23(e); *Adkins v. Midland Credit Mgmt., Inc.*, No. 5:17-cv-04107, 2022 WL 327739, at *1 (S.D. W. Va. Feb. 3, 2022), citing *Scardelletti v. Debarr*, 43 Fed. Appx. 525, 528 (4th Cir. 2002); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991); *Domonoske*, 790 F. Supp. 2d at 472; *Muhammad*, 2008 WL 5377783, at *3.  "The primary concern addressed by Rule 23(e) is the protection of class

members whose rights may not have been given adequate consideration during the settlement." *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158; *see also Groves*, 2011 WL 4382708, at *4.

Such approval typically involves a two-step process of "preliminary" and "final" approval. *See Manual for Complex Litigation* § 21.632, at 414 (4th ed. 2004); *Grice v. PNC Mortgage Corp. of Am.*, No. 97-3804, 1998 WL 350581, at *2 (D. Md. May 21, 1998) (endorsing Manual's two-step process); *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1992). In the first stage, the parties submit the proposed settlement to the Court for preliminary approval. In the second stage, following preliminary approval, the Class is notified and a fairness hearing scheduled at which the Court will determine whether to approve the settlement. *See Bicking v. Mitchell Rubenstein & Assocs.*, No. 3:11-cv-78, 2011 WL 5325674, at *4 (E.D. Va. Nov. 3, 2011) ("Prior to granting final approval, the court must direct reasonable notice to all potentially affected class members, allow time for objection, and provide a 'fairness hearing.'").

Upon submission to the court of the parties' proposed settlement, a court will undertake a preliminary evaluation to determine whether the proposed settlement "appears to fall within the range of possible approval." *Manual for Complex Litigation* § 30.41, at 265 (3d ed. 2000); *see also All Bromine Antitrust Plaintiffs v. All Bromine Antitrust Defendants*, 203 F.R.D. 403, 416 (S.D. Ind. 2001). "Whether to preliminarily approve a proposed class action settlement lies within the sound discretion of the district court." *Stephens v. Farmers Rest. Grp.*, 329 F.R.D. 476, 482 (D.D.C. 2019). "[T]here is an overriding public interest in favor of settlement, particularly in class action suits." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08-cv-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). The bar for obtaining preliminary approval is low. *All Bromine Antitrust Plaintiffs*, 203 F.R.D. at 416.

In determining whether a settlement meets the requirements of Rule 23, the Fourth Circuit has adopted a bifurcated analysis involving inquiries into the fairness and adequacy of the settlement. *Scardelletti*, 43 Fed. Appx. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158; *Groves*, 2011 WL 4382708, at *4. Pursuant to Rule 23(e)(2), the district court may approve the settlement "only after a hearing and only on finding that it is fair, reasonable and adequate after considering whether:

> **(A)** the class representatives and class counsel have adequately represented the class;
>
> **(B)** the proposal was negotiated at arm's length;
>
> **(C)** the relief provided for the class is adequate, taking into account:
>
>> **(i)** the costs, risks, and delay of trial and appeal;
>>
>> **(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> **(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> **(iv)** any agreement required to be identified under Rule 23(e)(3); and
>
> **(D)** the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). These amendments to Rule 23 are consistent with longstanding Fourth Circuit caselaw and law in this district recognizing that a class settlement is fair when it is "reached as a result of good faith bargaining at arm's length, without collusion." *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159; *Bicking*, 2011 WL 5325674, at *4. The Court should be satisfied that "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Samuel v. Equicredit Corp.*, No. 00-6196, 2002 WL 970396, at *1 n.1 (E.D. Pa. 2002); *In re Vitamins Antitrust Litig.*, MDL No. 1285, 2001 U.S. Dist. LEXIS 25071, at *29-30; *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993). "Absent evidence to the contrary, the court may presume

that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion." *Muhammad*, 2008 WL 5377783, at *4.

In assessing the fairness of a proposed settlement, the Court must look to the following factors: (1) posture of the case at the time the settlement is proposed; (2) extent of discovery that has been conducted; (3) circumstances surrounding the negotiations; and (4) experience of counsel in the relevant area of class action litigation. *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practice,* 952 F.3d 471, 484 (4th Cir. 2020); *see also Scardelletti*, 43 Fed. Appx. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159; *Groves*, 2011 WL 4382708, at *4; *Loudermilk Servs., Inc.*, No. 3:04-cv-966, 2009 WL 728518, at *8 (S.D.W. Va. Mar. 18, 2009). In determining the adequacy of the proposed settlement, the Court must consider: (1) relative strength of Plaintiff's case on the merits; (2) existence of any difficulties of proof or strong defenses Plaintiff is likely to encounter if the case proceeds to trial; (3) anticipated duration and expense of additional litigation; (4) solvency of defendant and likelihood of recovery of a litigated judgment; and (5) degree of opposition to the settlement. *Id.*; *see also Scardelletti*, 43 Fed. Appx. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159; *Groves*, 2011 WL 4382708, at *5; *Loudermilk Servs., Inc.*, 2009 WL 72818, at *3.

Consideration of the applicable factors reveals that the proposed Settlement Agreement should be preliminarily approved. The Settlement was indeed the product of serious, informed, arm's-length, and non-collusive negotiations. Before settling this matter, the Parties participated in informal negotiations among counsel, all of whom are experienced in consumer class actions and Pay-to-Pay litigation specifically. By the time the parties reached a settlement, Plaintiffs' Counsel and Defendant's Counsel, who are both experienced with complex class action claims such as these, had "a clear view of the strengths and weaknesses" of their case and were in a strong

position to make an informed decision regarding the reasonableness of a potential settlement. *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985) *aff'd*, 798 F.2d 35 (2d Cir. 1986).

The Settlement has no obvious deficiencies and does not grant preferential treatment to the class representatives or any segments of the class. Each Settlement Class Member will receive a significant cash award. The intrinsic value of the net settlement payment to class members is readily apparent when one considers the risks inherent in continued and protracted litigation, the costs and uncertainty of litigation, and the expense and delay that accompany the appeal process.

The Settlement is particularly valuable to absent class members who, but for the Settlement, likely would be unaware of the existence of their legal claims. Even if they were aware, given the relatively small amounts of money involved, absent class members and attorneys who may represent them would have little financial incentive to prosecute individual actions. The alternative to bringing this case as a class action is bringing hundreds of individual claims against loanDepot. Realistically, the alternative to a class action under the present circumstances is no action at all.

"[C]ompromise and settlement are favored by the law." *Groves*, 2011 WL 4382708, at *4. The proposed settlement serves the overriding public interest in settling litigation. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). The complexity, expense, and duration of class action litigation are factors that mitigate in favor of preliminary approval of a settlement. *In re Corp. Litig.*, 264 F.3d 201, 231, 233 (3d Cir. 2001); *Girsh v. Jepson*, 521 F.3d 153, 157 (3d Cir. 1975); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). While the Parties could have litigated the case to judgment and taxed the resources of the litigants and the Court, they chose instead to rationally and reasonably forgo the expense and uncertainty of continued litigation

and focus their efforts on achieving a fair and adequate settlement that took the risks of further litigation into account.

Finally, the "opinion of class action counsel, with substantial experience in litigation of similar size and scope, is an important consideration." *Muhammad*, 2008 WL 4382708, at *4. "'When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight.'" *Id.* at *4 (quoting *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000)). In the present case, the proposed class counsel, who recommends the settlement, is skilled and experienced in consumer class actions. (Ex. B – Decl. of Patricia Kipnis ¶¶ 1-9). *See also Six v. Loancare, LLC*, No. Civ. A. 5:21-cv-00451, 2022 WL 16747291, at *4 (S.D. W Va. Nov. 7, 2022) (recognizing class counsel in convenience fee case to be "skilled and experienced in consumer class actions").

V. **CONDITIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE**

The Parties' proposed settlement contemplates the certification of a settlement class defined as follows:

> All persons (1) with a residential mortgage loan secured by property in West Virginia, (2) serviced or sub-serviced by loanDepot, and (3) who were assessed by and/or paid to loanDepot a convenience fee in connection with making a mortgage loan payment online or by phone (whether agent-assisted, via interactive voice recognition (IVR), or otherwise) during the Class Period. "Class Period" means the period from September 15, 2019, through date of the Preliminary Approval Order.

The proposed settlement class must meet the requirements for certification under Rule 23. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 236-37. The Parties have agreed to the certification of the class for settlement purposes only.

A.   **The Class Satisfies the Numerosity, Commonality, Typicality and Adequacy Elements of Rule 23(a)**

   1.   **Numerosity**

Rule 23(a)(1) requires that the class be of sufficient size that joinder of all members is "impracticable." *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 237; *Bicking*, 2011 WL 5325674, at *2. "In determining whether joinder is impracticable, a court should analyze the factual circumstances of the case rather than relying on numbers alone." *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 237; *see also Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir.1984); *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n,* 375 F.2d 648 (4th Cir. 1967). Factors to consider are "the estimated size of the class, the geographic diversity of class members, the difficulty of identifying class members, and the negative impact of judicial economy if individual suits were required." *Christman v. Am. Cyanamid Co*., 92 F.R.D. 441, 451 (N.D.W. Va. 1981); *see also McGlothlin v. Connors*, 142 F.R.D. 626, 632 (W.D. Va. 1992).

In the present case, the Class consists of approximately 276 accounts. Individual joinder of all of these persons is impracticable, especially considering the relatively small recovery sought and the geographic dispersal of class members across the state of West Virginia. Courts have certified class actions with far fewer members. *See, e.g.*, *Cypress*, 375 F.2d at 653 (eighteen class members).

   2.   **Commonality**

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 237; *see also Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). Either common questions of law or fact can establish commonality. *Black v. Rhone-Poulenc, Inc.*, 173 F.R.D. 156, 161 (S.D.W. Va. 1996). Factual differences among the class members' cases will not preclude certification if the class members

share the same legal theory. *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 498 (D. Md. 1998); *see also Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984); *Christman*, 92 F.R.D. at 452 n.28. The commonality requirement is subsumed under the more stringent predominance requirement of Rule 23(b). *Lienhart*, 255 F.3d at 147 n.4; *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 237.

This action implicates the central and overriding common question of whether Defendant's collection activities, specifically the assessment and collection of the released fees, violated West Virginia law. This question is common to all putative Settlement Class Members, as all have been subject to these collection activities. Accordingly, commonality is satisfied.

### 3. Typicality

To establish typicality under Rule 23(a)(3), the "claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 238. "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." *Black*, 173 F.R.D. at 162. For purposes of typicality, there is a "'sufficient nexus . . . if the claims or defenses of the class and class representatives arise from the same event or pattern or practice and are based on the same legal theory.'" *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 238 (quoting *In re Trazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 686 (S.D. Fla. 2004)). Thus, the typicality rule assures that the class representatives' interests are "aligned" with those of the class. *Kennedy v. Sullivan*, 138 F.R.D. 484, 488 (N.D.W. Va. 1991).

Plaintiffs' claims are clearly aligned with those of the putative Settlement Class Members. The facts supporting Plaintiffs' claims are straightforward and typical of, if not identical to, the claims of the Settlement Class Members. Like all other Settlement Class Members, Plaintiffs were

assessed the same convenience fees. As such, the proposed class satisfies the Rule 23(a)(3) typicality requirement.

### 4. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 238. The representative must show that there are no conflicts of interest between his interests and those of the class he seeks to represent and that he has the willingness and ability to play an active role in the litigation and vigorously represent the class, while protecting the interests of the absentee class members. *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129-30 (5th Cir. 2005); *see also Rhone-Poulenc*, 173 F.R.D at 162.

Plaintiffs have no interests that are antagonistic to or conflict in any way with the interests of the proposed Settlement Class as a whole. Plaintiffs share an interest with the other Settlement Class Members in opposing Defendant's alleged collection practices and have willingly stepped forward to pursue their claims on a class-wide basis. Plaintiffs have and will thus fairly and adequately protect the interests of the Settlement Class.

**B.** **The Proposed Class Satisfies Rule 23(b)(3) Requirements of Predominance and Superiority**

In order for Plaintiffs to satisfy Rule 23(b), the Court must find that (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006); *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004); *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 239-40.

1. **Common Questions of Law or Fact Predominate**

Rule 23(b)(3) requires that the questions of law or fact common to all class members predominate over questions pertaining to individual members. *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 239. Common questions predominate if class-wide adjudication of the common issues will significantly advance the adjudication of the merits of all class members' claims. "The predominance inquiry 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Lienhart*, 255 F.3d at 142 (quoting *Amchem Prod., Inc.*, 521 U.S. at 623); *Gariety*, 368 F.3d at 362. When certifying a class for settlement purposes only, manageability problems that would arise if the class were litigated, and that would prevent certification of a litigation class, need not be considered. *See Newberg on Class Actions* s. 13:36, p. 438 (4th ed. 2002) (stating that "for a settlement class there are fewer procedural barriers for certification . . . . Where class counsel must still prove there are common questions of law or fact, manageability concerns should not prevent a settlement class from being certified."); *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (U.S. 1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

The common question outlined above is broad and applies to all class members and is readily capable of determination on a class-wide basis. Further, Defendant has identified Settlement Class Members using its internal records.

2. **The Class Action is the Superior Method to Adjudicate Plaintiffs' Claims**

Rule 23(b)(3) also requires the Court to find that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Lienhart*, 255 F.3d at 147; *Bicking*, 2011 WL 5325674, at *3. Factors to be considered by the Court include: (1) class

members' interests in individually controlling the prosecution or defense of separate actions; (2) extent and nature of any litigation concerning the controversy already begun by or against class members; (3) desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) likely difficulties in managing a class action. Fed. R. Civ. P. 23(b). Because this lawsuit concerns a settlement class, there is no concern with manageability of the case related to individualized affirmative defenses asserted by Defendant in opposition to certification. *Amchem Prods., Inc.*, 521 U.S. at 620.

In the present case, as stated above, Settlement Class Members have little interest in prosecuting individual actions. As such, there is no better method available for the adjudication of the claims which might be brought by each individual class member. The alternative to bringing this case as a class action is bringing hundreds of cases. The relatively small recovery sought makes it highly unlikely that settlement class members would pursue their claims on an individual basis. Accordingly, it is desirable to concentrate the litigation of these claims in this Court. *See Amchem Prods., Inc.*, 521 U.S. at 617 (observing that Rule 23(b) allows "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all."); *Bicking*, 2011 WL 5325674, at *4 (same). Further, "[s]ettling this case as a class action will achieve economies for both the litigants and the court" through a significant reduction in the "overall cost of complex litigation, allowing plaintiffs' attorneys to pool their resources and requiring defendants to litigate all potential claims at once, thereby leveling the playing field between the two sides." *In re Serzone Prods. Liability Litig.*, 231 F.R.D. at 240; *see also In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 842 (E.D.N.Y. 1984). Therefore, there is no other superior method of adjudicating the controversy because class settlement provides an

efficient and appropriate resolution of the controversy. Plaintiffs have thus met the requirements of Rule 23(b)(3) for settlement purposes.

### VI. PROPOSED CLASS COUNSEL ARE QUALIFIED TO REPRESENT THE CLASS

Rule 23(g) requires that the Court appoint class counsel upon certification of the class. Factors for the Court to consider include: the work counsel has done in identifying or investigating potential claims in the action; counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; counsel's knowledge of the applicable law; and the resources counsel will commit to representation of the class. Fed. R. Civ. P. 23(g)(1)(C)(i).

Proposed class counsel, Bailey & Glasser LLP and Bordas and Bordas, PLLC, are qualified and able to represent the class. Proposed class counsel have submitted a declaration outlining their wide-ranging experience litigating consumer protection, class action, and other complex cases. (Ex. B – Decl. of Patricia Kipnis). As stated above, Plaintiffs' counsel performed substantial work in investigating, prosecuting and negotiating settlement of the case, and are qualified to serve as class counsel. *See Muhammad*, 2008 WL 537783, at *3 (recognizing skill and experience of Plaintiff's counsel); *Adkins v. Midland Credit Mgmt., Inc.*, No. 5:17-cv-04107, 2022 WL 327739, at *3 (S.D. W. Va. Feb. 3, 2022) (same).

### VII. PROPOSED SCHEDULE TO COMPLETE SETTLEMENT

The Court's calendar permitting, the parties propose the following schedule to complete the tasks necessary to effectuate the proposed settlement:

> Class Notice Mailed by: Seven (7) days after entry of the Court's Order granting preliminary approval of the Settlement.
>
> Objection Deadline: Fourteen (14) days prior to the Final Approval Hearing.
>
> Opt-Out Deadline: Fourteen (14) days prior to the Final Approval Hearing.
>
> Final Approval Submissions: Seven days after Opt-Out Deadline

Final Approval Hearing: At the earliest convenient date of the court on or after [DATE], which will ensure the Final Approval Hearing is no earlier than 90 days after the notices are mailed pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1715.

## VIII. CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court grant this Motion and enter the submitted Proposed Order, (1) preliminarily approving the Parties' proposed Settlement Agreement attached as Exhibit A; (2) provisionally certifying the proposed Settlement Class for settlement purposes only; (3) appointing Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel; (4) approving the form, manner, and content of class notice and the procedures for Settlement Class members to opt out or object; (5) approving David Epperly as the Settlement Administrator, (6) establishing a schedule to complete the tasks necessary to effectuate the proposed Settlement, and (7) staying the action pending Final Approval of the Settlement (except the stay of proceedings shall not prevent the filing of any motions, declarations, and other filings necessary to obtain and preserve final judicial approval of the Settlement Agreement).

Respectfully Submitted,

/s/ Patricia Kipnis
Patricia M. Kipnis (WVSB #12896)
**BAILEY & GLASSER LLP**
923 Haddonfield Road
Suite 300
Cherry Hill, NJ 08002
Telephone: (215) 274-9331
Email: PKipnis@baileyglasser.com

Jonathan R. Marshall (WVSB #10580)
James L. Kauffman (*admitted pro hac vice*)
**BAILEY & GLASSER LLP**
209 Capitol Street
Charleston, WV 25301

Telephone: (304) 345-6555
Email: jmarshall@baileyglasser.com
Email: jkauffman@baileyglasser.com

Jason E. Causey (WVSB #9482)
**BORDAS & BORDAS, PLLC**
1358 National Road
Wheeling, WV 26003
Telephone: (304) 242-8410
Email: jcausey@bordaslaw.com

*Counsel for Plaintiffs and Proposed Class Members*